IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PROFICIO BANK, | ORDER |
| Plaintiff, | |
| | AND |
| vs. | MEMORANDUM DECISION |
| THE WIRE SOURCE, LLC, et al., | Case No. 2:11-cv-00808-TC |
| Defendants. | |

On July 16, 2008, Plaintiff Proficio Bank (Proficio) and Defendant The Wire Source, LLC (Wire Source) entered into a Loan and Security Agreement related to a revolving loan made by Proficio to Wire Source.  On July 31, 2008, one of Wire Source's investors, Southington Industrial Park (Southington), executed a document known as the Validity Indemnification. Proficio alleges that, by signing the Validity Indemnification, Southington agreed to indemnify Proficio for any damages or losses caused by breach of the representations and warranties made in the Loan and Security Agreement.

When Wire Source defaulted on Proficio's loan, Proficio filed this action against Wire Source and later filed a Second Amended Complaint that added Southington as a Defendant.  In its Second Amended Complaint, Proficio asserts a single breach of contract claim alleging that Southington breached the Validity Indemnification when it refused to pay for the losses stemming from Wire Source's default.  Proficio dismissed its claims against all Defendants except Southington.

Southington and Proficio filed cross-motions for summary judgment.  For the reasons explained below, the court GRANTS Defendant Southington Industrial Park LLC's Motion for Summary Judgment (ECF No. 109) and DENIES Proficio's Cross Motion for Partial Summary Judgment (ECF No. 122).

## BACKGROUND[1]

### I.      Wire Source and Southington

In 1997, Southington invested $150,000 in Wire Source in exchange for a 33% interest in the company.  Wire source was a start-up company at the time with two other initial investor-owners, Thomas Ellis and Bradley Russell.  Mr. Ellis and Mr. Russell each invested $50,000 for a 33% interest in Wire Source.  According to Southington, Mr. Ellis and Mr. Russell paid lower initial investments because they ran the day-to-day business of the company.  Southington also maintains that although it was a managing member of Wire Source, it had no active role in company management.  Southington's management role in Wire Source is subject to dispute.

Mr. Ellis later sold his interest in the Wire Source.  After Mr. Ellis left the company, Mr. Russell and Southington each owned a 47.7% interest, and an employee, Jason Woodruff, owned the remaining 4.6%.

### II.      The Proficio Loan

In 2008, Wire Source began searching for a lender or investor to finance its operations. In May 2008, Mr. Russell secured a proposal from Proficio.  On July 16, 2008, Proficio and Wire Source executed a Loan and Security Agreement (the "Loan Agreement") that identified Wire

---

[1] The facts are taken from the parties' summary judgment briefing, with the court identifying disputes of material fact where they may exist.

Source as the "Borrower" and Proficio as the "Bank."  (Loan Agreement, ECF No. 46-1.)

Proficio agreed to make revolving loans to Wire Source up to an aggregate amount of

$4,000,000.  The Loan Agreement was signed by Mr. Russell and Robert Jacobson on behalf of

Southington, with Mr. Russell and Southington identified as managing members of Wire Source.

## III.    The Validity Indemnification

Before the Loan Agreement was executed, Proficio requested that Mr. Russell and

Southington sign an unlimited guaranty related to the Wire Source loan.  Mr. Russell signed the

Unlimited Guaranty in his individual capacity.  Although the parties dispute the reasons for

Southington's decision, it is undisputed that Southington refused to sign an unlimited guaranty.

Proficio later requested a limited guaranty from Southington, which Southington also rejected.

Proficio then executed the Loan Agreement on July 16, 2008, without any form of guaranty from

Southington.

On July 31, 2008, a Proficio employee named Vince Mancuso sent an email to Mr.

Russell which read, "Please ask Robert to sign this ASAP and date it in July so my ass is

covered."  (Email from Vince Mancuso to Brad Russell, ECF No. 110-1.)  Mr. Russell forwarded

the email to Mr. Jacobson. (Id.) Attached to the email was an initial draft of the Validity

Indemnification, which read in relevant part:

> The undersigned is a member of The Wire Source LLC (the "Client"). In
> order to induce you to extend financial accommodations to the Client pursuant to the
> Financing Agreement (the "Agreement") with the Client, the undersigned hereby
> warrants and represents to you as follows:
>
> 1.      All Client's accounts which have been or will be reported to you by or on
>         behalf of the Client and in which you hold a security interest ("Accounts"),
>         whether such reports are in the form of agings, borrowing base certificates,
>         collateral reports or financial statements, are genuine and in all respects what

they purport to be, represent bona fide obligations of Client's customers arising out of the performance of an service or the sale and completed delivery of merchandise sold by the Client in the ordinary course of its business in accordance with and in full and complete performance of customer's orders therefor.

. . . .

3.      Client is solvent.

. . . .

The undersigned hereby indemnifies you and holds you harmless from any direct, indirect, or consequential damage or loss which you may sustain as a result of the breach of any representation or warranty contained herein, (all of which are continuing and irrevocable for so long as the Client is indebted to you) . . . .  All such sums will be paid by the undersigned to you on demand.

(Draft Validity Indemnification, ECF No. 110-1.)

With the help of its attorney, Southington revised the Validity Indemnification to include

the following changes (identified by strikeout for deletions and underlining for additions):

The undersigned is a member of The Wire Source LLC (the "Client"). In order to induce you to extend financial accommodations to the Client pursuant to the Financing Agreement (the "Agreement") with the Client, the undersigned hereby warrants and represents to you ~~as follows~~ <u>that, to the Knowledge (as hereinafter defined) of the undersigned</u>:

1.      All Client's accounts which have been ~~or will be~~ reported to you by or on behalf of the Client and in which you hold a security interest ("Accounts"), whether such reports are in the form of agings, borrowing base certificates, collateral reports or financial statements, are genuine and in all <u>material</u> respects what they purport to be, represent bona fide obligations of Client's customers arising out of the performance of an service or the sale and completed delivery of merchandise sold by the Client in the ordinary course of its business in accordance with and in full and complete performance of customer's orders therefor.

. . . .

4

     3.      Client is solvent.

. . . .

> As used herein, "Knowledge" means the actual knowledge of the undersigned's Managing Member [Mr. Jacobson].
>
> The undersigned hereby indemnifies you and holds you harmless from any direct, indirect, or consequential damage or loss which you may sustain as a result of the breach of any representation or warranty contained herein, (all of which are continuing and irrevocable for so long as the Client is indebted to you) . . . .  All such sums will be paid by the undersigned to you on demand.

(Final Validity Indemnification, ECF No. 110-12.)  For the other warranties and language in the document, Southington also changed any future tense verbs to past or present tense.

Throughout the interactions related to the Loan Agreement, Proficio did not provide any documents directly to Southington; all documents passed through Mr. Russell. Similarly, Proficio never communicated directly with Southington about the Validity Indemnification.

On August 5, 2008, Mr. Jacobson faxed an executed copy of the Validity Indemnification, with all of the above revisions incorporated.  Proficio accepted the executed copy of the Validity Indemnification without comment or objection to the revisions.  It also executed the revised version of the Validity Indemnification.

Before Southington edited or executed the Validity Indemnification, Proficio had disbursed over $3,700,000 of the $4,000,000 line of credit to Wire Source.

Proficio does not dispute that, on July 31, 2008 (the date of the Validity Indemnification), Mr. Jacobson had no knowledge that the representations in the Validity Indemnification were untrue.  (Mem. in Opp'n to Mot. for Summ. J. and in Supp. of Cross Mot. for Partial Summ.

J. 13, ECF No. 123.)  And there is no other evidence that the representations were untrue on July 31, 2008.  (Id.)

On August 18, 2011, Proficio demanded repayment of the notes it had issued to Wire Source.  The unpaid principal amounted to $2,446,703.03.  Proficio filed its complaint in this case when Wire Source failed to pay the amount due.  Proficio later added Southington as a defendant, based on Southington's refusal to pay for Wire Source's default.

## ANALYSIS

The court grants summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In cases like this where the parties file cross-motions for summary judgment, the motions "are to be treated separately; the denial of one does not require the grant of another."  Buell Cabinet Co. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).  The court is therefore required to "construe all inferences in favor of the party against whom the motion under consideration is made."  Pirkheim v. First Unum Life Ins., 229 F.3d 1008, 1010 (10th Cir. 2000) (quotations omitted).

The parties' cross-motions for summary judgment raise three issues for the court's consideration.[2]  First, how should the Validity Indemnification be interpreted?  Second, has Proficio established a breach by Southington?  And third, can Proficio prove causation between an identified breach and its alleged damages?  The court answers the first and second questions

---

[2] In addition, there may be a choice of law question in this case because the Validity Indemnification does not contain a choice of law provision.  According to the parties, either Georgia or Utah law could potentially apply.  The parties appear to agree that Utah law would apply if the court performed a choice of law analysis, but because the elements for breach of contract are the same under Georgia and Utah law, the parties concede that the choice is immaterial.  In their briefs, both parties have applied Utah law. The court does the same.

in Southington's favor and consequently does not address the third issue.

**I.       Interpretation of the Validity Indemnification**

With a sole breach of contract claim against Southington, the critical, overarching issue is how the contract (the Validity Indemnification) should be interpreted.  Southington argues that its representative, Robert Jacobson, made changes to the Validity Indemnification, which Proficio accepted without objection.  And the final language of the Validity Indemnification shows that Southington did not intend to make warranties about Wire Source's future financial condition. Rather, Southington's representations and warranties made in the Validity Indemnification were limited to Mr. Jacobson's knowledge as of the date he executed the document. Proficio contends that the Validity Indemnification makes Southington's representations and warranties "continuing and irrevocable," meaning that Southington had an ongoing responsibility to notify Proficio of any change in Wire Source's financial condition.

When interpreting a contract under Utah law, "the intentions of the parties are controlling."  Cent. Fla. Invs., Inc. v. Parkwest Assocs., 2002 UT 3, ¶ 12, 40 P.3d 599.  The court "first look[s] to the four corners of the agreement to determine the intentions of the parties."  Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist, 773 P.2d 1382, 1385 (Utah 1989). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."  Cent. Fla. Invs., 2002 UT 3, ¶ 12.  But if the contract language is ambiguous, the court must look to extrinsic evidence to determine the parties' intent. Id.

A.        Four Corners of the Validity Indemnification

The four corners of the Validity Indemnification limit the scope of the contract representations to Mr. Jacobson's knowledge on the date he signed the document.  In the final, executed contract, as edited by Southington and accepted by Proficio, each representation is stated in the past or present tense.  For instance, Southington warranted that "[a]ll accounts have been reported to you [Proficio]" and "Client [Wire Source] is solvent."  (Final Validity Indemnification, ECF No. 110-12.)  Southington also explicitly added language limiting the definition of "Knowledge" to "actual knowledge of the undersigned's Managing Member."  (Id.) And it removed the phrase, "or will be." (Id.)  Mr. Jacobson could not warrant knowledge of future events, and the verb tenses make clear that Southington was not making promises about the future condition of Wire Source.

Proficio focuses on language in the Validity Indemnification stating that the representations are "continuing and irrevocable for as long as [Wire Source] is indebted to [Proficio]."  (Id.)  This term does not alter the language limiting the representations to past or present conditions.  Rather, it sets the time in which Southington was required to stand by the contractual representations.  Because Southington made "continuing and irrevocable" representations, it could not withdraw the representations or disclaim its contractual obligations before the loan was paid.  But "continuing and irrevocable" does not require Southington to continuously warrant Wire Source's financial stability until the loan was paid.

To hold otherwise would render the past and present tense verbs used in the representations meaningless.  The court cannot allow such a result, particularly where the contract language can be harmonized by concluding that Southington was limiting its

8

representations to its knowledge on the date of the contract and agreeing that it would stand by its stated knowledge for the life of the loan.  See McNeil Eng'g & Land Surveying, LLC v. Bennett, 2011 UT App 423, ¶ 17, 268 P.3d 854 ("When interpreting a contract we attempt to give effect to each provision and we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." (citations and quotations omitted)).

To support its position that the changes did not remove Southington's ongoing obligation under the Validity Indemnification, Proficio relies on the court's decision on Southington's motion to dismiss, in which the court rejected Southington's interpretation and stated, "But the Validity Indemnification states that all of the representations and warranties contained in the agreement 'are continuing and irrevocable for so long as [Wire Source] is indebted to [Proficio].' SIP's argument cannot stand in the face of the plain language of the indemnification agreement." (ECF No. 45 at 9.)  This decision was made at the pleading stage, without the benefit of discovery.  It was not a final ruling on the interpretation of the Validity Indemnification.

**B.**   **Extrinsic Evidence**

Now, after the benefit of discovery, Southington has presented evidence that supports its interpretation.  To the extent that the "continuing and irrevocable" language makes the contract ambiguous, the undisputed evidence still supports Southington's position. It is undisputed that Southington refused to execute an unlimited guaranty when Proficio requested it in May 2008. Mr. Russell signed an unlimited guaranty, but Southington would not.  And Southington further refused to sign even a limited guaranty in July 2008.  These facts confirm that Southington had no intention of guarantying Wire Source's ability to repay the Proficio loan.

Moreover, additional undisputed evidence contradicts Proficio's assertion that the

9

Validity Indemnification was a critical agreement on which it relied to ensure that Southington was making ongoing warranties.  In particular, on July 16, 2008, Proficio executed the Loan and Security Agreement and soon after paid most of the loan proceeds to Wire Source.  When Proficio paid out a majority of the loan, it had no signed agreement from Southington. It was not until July 31, 2008, when $3,700,000 had been disbursed to Wire Source, that a Proficio employee asked for a signature on the Validity Indemnification so his "ass [would be] covered." (Email from Vince Mancuso to Brad Russell, ECF No. 110-1.)

The events that followed further reinforce the conclusion that Southington intended to limit its warranties in the Validity Indemnification.  When Mr. Jacobson received the draft Validity Indemnification, he did not sign it as it was written.  Rather, he made significant changes with the help of Southington's attorney.  Southington added qualifying language limiting the representations to Mr. Jacobson's actual knowledge.  It also deleted any reference to future conditions and added temporal limitations such that the representations were limited to past or present tense.  Mr. Jacobson then signed the revised Validity Indemnification and faxed it to Proficio.  Proficio never spoke to Southington directly about the Validity Indemnification, and it did not comment on or object to Southington's changes.  In light of these undisputed facts, it is clear that Southington only intended to warrant that it knew Wire Source was solvent and able to pay back the loan on July 31, 2008.  It was not making any representations about Wire Source's future condition.

### C.    Contemporaneous Documents

Proficio contends that this interpretation cannot stand because the court must read the Validity Indemnification together with contemporaneous documents, including the Loan and

10

Security Agreement (ECF No. 124-3) and the Borrowing Base Certificate (ECF No. 124-4). According to Proficio, these documents confirm the nature of the loan as a revolving loan and support the position that Southington accepted continuing obligations on the Wire Source loan.

In Utah, "[w]hen agreements are executed 'substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized, if possible.'" Verhoef v. Aston, 740 P.2d 1342, 1344 (Utah 1987) (quoting Atlas Corp. v. Clovis Nat'l Bank, 737 P.2d 225, 229 (Utah 1987)). Utah courts have found that documents are substantially contemporaneous and clearly interrelated where one document requires the execution of another, where documents are signed close to the same time, where one document incorporates the other by reference, and where the provisions of the agreements are consistent. See, e.g., Atlas Corp., 737 P.2d at 277; HCA Health Servs. of Utah, Inc. v. St. Mark's Charities, 846P.2d 476, 479 (Utah Ct. App. 1993).

Here, the Loan Agreement and Base Borrowing Certificate are clearly interrelated, but it is not clear that the Validity Indemnification is also interrelated. The Loan Agreement was signed on July 16, 2008, and the Borrowing Base Certificate was an exhibit to the Loan Agreement. Both documents specifically refer to the other. And both documents use the same defined terms.

By contrast, the Validity Indemnification is not an exhibit to or referred to in the Loan Agreement. Indeed, it was not sent to Southington until July 31, 2008, after the Loan Agreement had been executed and Proficio had paid much of the loan proceeds to Wire Source. The Validity Indemnification uses different terms, such as "Client" rather than "Borrower" and "Financing Agreement" rather than "Loan and Security Agreement." The Validity

Indemnification also cites a provision of the California code, while the Loan Agreement is explicitly governed by Utah law.  Moreover, the Loan Agreement was renewed multiple times with no mention of the Validity Indemnification.  Under these circumstances, the court concludes that the documents are not clearly interrelated and are not substantially contemporaneous such that the court must consider all three together.

But even if the court were to construe the three documents as one, there is nothing in the Loan Agreement or Borrowing Base Certificate that contradicts Southington's interpretation of the Validity Indemnification. Although the Loan Agreement and Borrowing Base Certificate make clear that Proficio was providing a revolving loan, the nature of the loan by itself does not support the conclusion that Southington was warranting Wire Source's financial status into the future. Although the amount that Wire Source could borrow changed over time, the total for the line of credit remained the same at $4,000,000.  Southington's interpretation is consistent with an intent to represent that at the outset of the loan, Wire Source was financially able to repay any amount it borrowed up to the full $4,000,000.  The revolving nature of the loan does not change that warranty or add a promise that Wire Source's financial condition would remain the same.

## II.      Breach and Causation

Having concluded that the Validity Indemnification limits Southington's liability to its knowledge as of July 31, 2008, the court must consider whether Southington breached its contractual representations as of that date.  Proficio, however, has explicitly acknowledged that there is no evidence that, at the time he signed the Validity Indemnification, Mr. Jacobson had knowledge contrary to the representations he made in the contract.  And there is no other evidence that any representation in the Validity Indemnification was untrue as of July 31, 2008.

As a result, Proficio cannot prove a breach of the Validity Indemnification and the court grants summary judgment in Southington's favor.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant Southington Industrial Park LLC's Motion for Summary Judgment (ECF No. 109) and DENIES Proficio's Cross Motion for Partial Summary Judgment (ECF No. 122).

DATED this 1st day of September, 2015.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge